UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZAVION JOHNSON,<br><br>    Petitioner,<br><br>v.<br><br>TOM FELKER, WARDEN, HIGH DESERT STATE PRISON, SUSANVILLE, CALIFORNIA; EDMUND G. BROWN, JR. ATTORNEY GENERAL OF THE STATE OF CALIFORNIA,<br><br>    Respondents. | NO. CV-07-357-RHW<br><br>**ORDER DENYING HABEAS PETITION** |

Before the Court is Petitioner's Petition for Writ of Habeas Corpus, 28 U.S.C. Section 2254 (Ct. Rec. 1). Petitioner is a state prisoner currently confined by the California Department of Corrections at High Desert State Prison, Susanville, California, and is proceeding *pro se*.[1]

Petitioner was convicted by a jury of the offenses of second degree murder (Cal. Penal Code § 187) and assault by means of force of a child in his care and custody, resulting in the death of a child under eight years old (Cal. Penal Code § 273ab). On January 17, 2003, Petitioner was sentenced to an indeterminate term of twenty-five years to life imprisonment.

---

[1] According to Petitioner, he is now incarcerated at Centinela State Prison, Imperial California (Ct. Rec. 17).

**ORDER DENYING HABEAS PETITION** ~ 1

Petitioner appealed his conviction and sentence.  In his appeal, he asserted two claims for relief: (1) the trial court committed reversible error by giving an improper "pinpoint" instruction; and (2) a sentence of 25 years to life was cruel and unusual punishment as applied to Petitioner.  The California Court of Appeal affirmed the judgment on September 24, 2004, in an unpublished opinion.  Petitioner petitioned for review to the California Supreme Court, which was summarily denied on December 1, 2004.  Petitioner's conviction became final on March 1, 2005.

On December 5, 2005, Petitioner filed a Petition for Writ of Habeas Corpus in the Superior Court of California, County of Sacramento.  In his petition, he asserted seven claims for relief: (1) he received ineffective assistance of trial counsel; (2) there was insufficient evidence to support his conviction; (3) his conviction was wrongful for numerous reasons; (4) he received ineffective assistance of appellate counsel; (5) his expert testimony was deficient; (6) the trial court erroneously gave CALJIC No. 2.03; and (7) his sentence is cruel and unusual.  The petition was denied on January 19, 2006.

Petitioner then filed a Petition for Writ of Habeas Corpus in the Court of Appeal for the State of California.  Again, he asserted seven claims for relief: (1) he received ineffective assistance of trial counsel; (2) there was insufficient evidence to support his conviction (actual innocence); (3) he received ineffective assistance of appellate counsel, client/attorney breakdown; (5) disproportionate sentence; conflict of interest, and numerous errors committed at trial; (6) the trial court erroneously gave CALJIC No. 2.03; and (7) his sentence is cruel and unusual.  This petition was summarily denied on March 9, 2006, without comment.

On April 12, 2006, Petitioner filed a Petition for Writ of Habeas Corpus in the California Supreme Court.  In his petition, he asserted seven claims for relief: (1) ineffective assistance of trial and appellate counsel; (2) lack of sufficiency of the evidence; (3) denial of due process; (4) wrongful conviction; (5) disproportionate

**ORDER DENYING HABEAS PETITION** ~ 2

and illegal sentence; (6) wrong jury instructions; and (7) cruel and unusual punishment and unfair punishment. The petition was summarily denied on December 13, 2006.

On February 22, 2007, Petitioner filed his federal Petition for Writ of Habeas Corpus presenting seven grounds for relief: (1) ineffective assistance of trial counsel; (2) ineffective assistance of appointed appellate counsel; (3) insufficiency of the evidence; (4) illegal instructions given to the jury by the trial court; (5) illegal sentence imposed in violation of the U.S. Constitution as factors used to sentence Petitioner were determined by the court and not by the jury, in violation of Petitioner's rights under Cunningham v. California; (6) cruel and unusual sentence imposed in violation of the U.S. Constitution; and (7) Petitioner is factually innocent.

## FACTS

The California Court of Appeal summarized the facts as follows:

> Defendant and Racquel Wynn started dating when he was a senior in high school. Shortly after graduating, Wynn discovered she was pregnant. The child, whom they named Nadia, was born in July, 2001. Defendant and Wynn each lived with their parents.
>
> On the Friday after Thanksgiving 2001, Wynn and Nadia spent the night at the residence of defendant's mother. On Saturday morning, Wynn left for work shortly after 9:00 a.m. She told defendant Nadia was asleep on the bed; defendant replied that he might take Nadia to his great-grandmother's house to visit his cousin.
>
> Later that morning, defendant's younger sister checked on Nadia. Defendant, who had just gotten out of the shower with Nadia, was dressing Nadia. The sister noticed Nadia was starting to fall asleep while Defendant dressed her, had "a raspy sound in her voice when she was breathing," and seemed lifeless. Defendant denied knowing why Nadia was acting this way. Defendant's mother checked Nadia and also noticed her "raspy" breathing and a red mark on her lip." Defendant explained that his younger brother had hit Nadia with a toy.
>
> In the early afternoon, defendant's great-grandmother and his cousin arrived to take defendant and Nadia to the great-grandmother's house for a visit. Since Nadia still appeared nonresponsive, they decided to stop at a clinic to have her examined.
>
> When they were unable to find a clinic that was open, they called Wynn's father to ask for a ride to the hospital. While they were waiting, defendant called 911 and reported that Nadia was not breathing normally. The 911 dispatcher sought to ascertain the source of the problem; but defendant's responses merely described Nadia's physical symptoms. The dispatcher relayed instructions for mouth-to-

**ORDER DENYING HABEAS PETITION ~ 3**

mouth resuscitation, which defendant attempted until the fire department emergency medical personnel arrived at 3:20 p.m. The emergency medical personnel determined that Nadia was not breathing and had no pulse. They immediately established an airway to her lungs, gave her oxygen, and undertook cardiopulmonary resuscitation. The emergency medical personnel, who did not observe any external signs of trauma, were unable to elicit much information from defendant, which they considered unusual.

Nadia was transported to the pediatric intensive care unit of a nearby hospital. She was already extraordinarily cold; her brain was unable to perform necessary functions; and bruises were apparent on her head, neck and abdomen.

Defendant was questioned by Sacramento police officers at the hospital. His only explanation for four-month-old Nadia's injuries was his assumption that his one-year-old brother had hit Nadia with a toy.

Early Sunday morning, defendant told Wynn that after the toy incident he had accidentally dropped Nadia while he was taking a shower with her and that she had hit her head on the back of the bathtub. Wynn's father advised defendant to speak with an attorney "immediately" before telling anyone else what had happened, and defendant's mother agreed.

On Monday, November 26, 2001, Nadia was removed from life support and died.

Dr. Kevin Coulter, the Medical Director of the Child and Adolescent Abuse Referral and Evaluation Center at the University of California Davis Medical Center, testified that the cause of death was multiple injuries to the head and brain as the result of being violently shaken in additional to another impact trauma during or after the shaking. He did not believe a fall of four feet would have accounted for Nadia's injuries. Dr. Coulter observed bruising of the tissues close to the skull that had resulted from a traumatic blow to the head, as well as bruising under the skin on the back of Nadia's neck, which was consistent with sustained choking. Nadia's skull was fractured with a force not normally seen from short falls.

Dr. Gregory Reiber, the forensic pathologist who performed the autopsy of Nadia, observed retinal hemorrhages and a widely dispersed subdural hematoma, which resulted from a rapid rotational movement of the head, as opposed to a simple fall.

Dr. Claudia Greco, a neuropathologist who examined Nadia's brain tissue with a microscope, observed damage to the brain stem and cervical spinal cord, which could have been caused only by severe shaking.

Defendant testified that his one-year-old brother struck Nadia in the mouth with a toy on the Saturday after Thanksgiving. After bathing Nadia in the cast-iron bathtub, he accidentally dropped her after she kicked her feet onto his chest and slipped out of his hands. Nadia fell about four feet and hit her head on the tub. Defendant did not tell his mother about the accident because he did not believe it was serious. Defendant testified that he answered all of the paramedics' questions, although he did not mention the fall.

Richard Robertson, Ph.D, a biomechanical consultant who specializes in the study of how much force is required to damage certain parts of the body, testified that the injuries Nadia suffered were consistent with, and could have been caused by the accident defendant described.

Additional witnesses for the defense included defendant's sister,

**ORDER DENYING HABEAS PETITION ~ 4**

his counsel, the emergency medical personnel who responded to the 911 call, and individuals who testified that defendant was not violent and was a good caretaker of children.

## STANDARD OF REVIEW

In order to succeed with his § 2254 petition, Petitioner must establish that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a).  Petitioner must also establish that his claims were adjudicated on the merits in state court proceedings and that the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d).  A determination of a factual issue made by the State court shall be presumed to be correct. § 2254(e).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  *Id.*

A state court's decision is "contrary to" clearly established federal law only where "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-24 (2000).  There is an "unreasonable application" of clearly established federal law when a state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407-08.  A state court decision can also involve an unreasonable application of clearly established precedent "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407.  The state court's error must be one that the habeas court concludes is objectively unreasonable, not merely erroneous or incorrect. *Id.* at 409-11.

**ORDER DENYING HABEAS PETITION** ~ 5

PETITIONER'S CLAIMS

**1.     Ineffective Assistance of Trial Counsel**

In claim one, Petitioner alleges that his trial counsel was ineffective for failing to (1) interview important witnesses; (2) research into the physical and medical issues of the victim, including hereditary links to hemophilia; (3) research Petitioner's medical and mental history; and (4) retain appropriate medical experts.

Petitioner presented these arguments in his habeas petitions before the state courts. The Superior Court of California, County of Sacramento noted that Petitioner failed to identify the prospective witnesses, or explain how these witnesses would have testified. It noted that Petitioner failed to present evidence to show that the victim's birth involved the use of forceps or any scientific evidence that such use causes physical injury to children in general and to the victim in particular. Likewise, Petitioner failed to present evidence of his alleged mental state and failed to show what effect any "mental state" evidence would have had on the trial, especially given the jury's reliance on the medical findings. Finally, Petitioner failed to identify any other expert witness whose testimony would have been useful at his trial, and the court noted that counsel called Richard Robertson, a biomechanical consultant, who testified that the victim's injuries could have been caused by the accident that Petitioner described.

To establish ineffective assistance of counsel, the petitioner must show (1) that counsel's performance fell below an objective standard of performance, and (2) that the ineffective performance prejudiced the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Petitioner has failed to overcome the presumption that counsel exercised reasonable professional judgment. Moreover, Petitioner has failed to show a reasonably probability that, had counsel interviewed additional witnesses, researched medical issues and mental health issues, or retained appropriate expert witnesses, the result of the proceeding would have been different. As such, the

**ORDER DENYING HABEAS PETITION ~ 6**

state court's determination that Petitioner's counsel's performance was not deficient was not contrary to, or an unreasonable application of federal law.

## 2. Ineffective Assistance of Appellate Counsel

In claim two, Petitioner argues that his appellate counsel was ineffective. He asserts that a variety of very meritorious issues were not raised because of the lack of communication between Petitioner and his appointed appellate counsel. Petitioner does not identify the meritorious issues that were not raised on appeal. The failure to do so is fatal to Petitioner's claim because he must over come a "strong presumption" that appellate counsel's performance fell within the "wide range of reasonable professional assistance." See Strickland, 466 U.S. at 689-90. Likewise, Petitioner has not carried his burden of showing prejudice. The Sacramento County Superior Court held that Petitioner failed to show that his appellate counsel's decisions regarding his appeal were unreasonable in light of his conviction. This determination was not contrary to, or an unreasonable application of federal law.

## 3. Insufficiency of the Evidence

In claim three, Petitioner argues there was not sufficient evidence to convict him. Specifically, he argues that there was not sufficient evidence to show that the death was caused by "shaken baby" syndrome; nor was there sufficient evidence as to the petitioner's willful actions.

The Sacramento County Superior Court rejected this claim, finding it was procedurally barred when Petitioner failed to raise it on appeal.

Under the procedural bar doctrine, a federal court ordinarily will not review a state court ruling if the state court found that the claim was barred pursuant to an independent and adequate state procedural rule. Robinson v. Schriro, 595 F.3d 1086, 1100 (9th Cir. 2009). "A federal court will review the claim if Petitioner can show either cause and prejudice, a fundamental miscarriage of justice, or if the Government waived the procedural default. Id., at 1100, n. 10 (citations omitted).

**ORDER DENYING HABEAS PETITION** ~ 7

There are two types of procedural bars: express and implied. Id. at 1100. An express procedural bar occurs when the petitioner has presented his claim to the state courts and the state courts have relied on a state procedural rule to deny or dismiss the claim. Id. An implied procedural bar occurs when the petitioner has failed to fairly present his claims to the highest state court and would now be barred by a state procedural rule from doing so.

Here, the state court expressly ruled that this particular claim was barred, and the state has not waived the default. Therefore, in order for the claim to survive, Petitioner must show either cause and prejudice, or that a fundamental miscarriage of justice would result if relief is not granted. Petitioner has not argued cause and prejudice. In Schlup v. Delo, the Supreme Court held that a petitioner's otherwise-barred claims may be considered on the merits if his claim of actual innocence is sufficient to implicate a fundamental miscarriage of justice. 513 U.S. 298, 315 (1995). "In order to pass through Schlup's gateway, and have an otherwise barred constitutional claim heard on the merits, a petitioner must show that, in light of all the evidence, including evidence not introduced at trial, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. A petitioner need not show that he is 'actually innocent' of the crime he was convicted of committing; instead, he must show that a court cannot have confidence in the outcome of the trial." Majoy v. Roe, 296 F.3d 770, 776 (9th Cir. 2002). To be credible, "a gateway claim requires 'new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." House v. Bell, 547 U.S. 518, 537 (2006).

Petitioner has failed to meet his burden. In claim seven, Petitioner makes a freestanding claim of actual innocence. In that claim, Petitioner asserts that he is innocent because the medical evidence relied on at his trial "has since been substantially rejected in the medical/forensic field by the increasing and evolving

**ORDER DENYING HABEAS PETITION** ~ 8

learning and research in the area of shaken baby syndrome." As noted by the State, Petitioner does not offer any actual evidence or explain what the new research shows or how it would apply to his case. This is fatal to Petitioner's claim of actual innocence.

**4.      Erroneous Jury Instruction**

In claim four, Petitioner asserts that the jury was erroneously instructed because it was error to give a "pin point" instruction to the jury, forcing the jury to focus on the alleged misleading statement of Petitioner as proof of his guilt, as well as other instructions that were given in the cases. The instruction in question instructs the jury that the defendant's deliberately false statements may be considered as a circumstance tending to prove a consciousness of guilt.

The California Court of Appeal denied this claim on direct appeal, noting that the California Supreme Court has repeatedly rejected the claim that CALJIC No. 2.03 is an impermissible pinpoint instruction.

Even if the instruction was incorrect under state law, this is not a basis for habeas relief. Estelle v. McGuire, 502 U.S. 62, 71 (1992). In order to be entitled to habeas relief, Petitioner must demonstrate that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Id. The instruction "'may not be judge in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." Id.

Here, the jury instruction was properly given, and did not infuse the trial with unfairness as to deny due process of law. Turner v. Marshall, 63 F.3d 807, 819-20 (9th Cir.1995), overruled in part on other grounds by Tolbert v. Page, 182 F.3d 677 (9th Cir.1999) (en banc). Petitioner made several inconsistent statements concerning the incident and related to the crime for which he was tried.

**5.      Sixth Amendment violation -** Cunningham v. California

In claim five, Petitioner asserts that his sentence was imposed in violation of the U.S. Constitution as factors used to sentence Petitioner were determined by the

**ORDER DENYING HABEAS PETITION** ~ 9

court and not by the jury, in violation of Petitioner's rights under Cunningham v. California. Specifically, Petitioner asserts that he sought a sentence of probation that was denied by the trial court using factors set forth in the probation report.[2]

In Cunningham, the United States Supreme Court invalidated California's Determinate Sentence Law to the extent it allows a trial court to consider at the time of sentencing certain aggravating factors that were not found by a jury to be true beyond a reasonable doubt, other than prior convictions. 549 U.S. 270, 293 (2007). It follows that Cunningham does not apply where, as here, Petitioner is serving an indeterminate sentence.

In this case, Petitioner was eligible to be considered for probation. The trial court expressly stated that its decision had been guided by the factors set forth in the California rules and noted in particular the vulnerability of the four-month-old victim to deny probation. The denial of probation did not implicate Petitioner's constitutional rights. See United States v. Belgard, 894 F.2d 1092, 1100 (9th Cir. 1990) (holding that defendants do not have a constitutional right to probation). Similarly, Petitioner does not have a constitutional right to have a jury find the facts supporting the denial of probation.

**6.    Cruel and Unusual Sentence**

In claim six, Petitioner asserts that his sentence was cruel and unusual because he was 20 years old at the time of his sentencing and he was sentenced to 25 years to life.

The California Court of Appeal rejected Petitioner's argument on direct appeal. It noted that Petitioner waived this claim by failing to raise it in the trial court. It recounted that the jury found that Petitioner violently abused a helpless four-month-old infant and then repeatedly failed to disclose the facts of the infant's

---

[2]The State argues that this claim is barred by Teague v. Lane, 489 U.S. 288 (1989). This argument is now foreclosed by Butler v. Curry, 528 F.3d 624 (9th Cir. 2008).

**ORDER DENYING HABEAS PETITION** ~ 10

injuries. It noted that the victim posed no threat to defendant's well-being.

The Eighth Amendment protects against the infliction of "cruel and unusual punishments." U.S. .Const. amend. VIII. "The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are "grossly disproportionate" to the crime." Ewing v. California, 538 U.S. 11, 23 (2003) (citation omitted).

In this case, Petitioner's relative youth is far outweighed by other factors relating to his conduct, including the vulnerability of the victim and the nature and scope of the injuries. The state court's conclusion that Petitioner's sentence was neither cruel or unusual was not contrary to or an unreasonable application of clearly established federal law.

**7.    Actual Innocence**

In claim seven, Petitioner argues that he is innocent of the charges. The United States Supreme Court has declined to recognize a freestanding innocence claim in a capital claim. House v. Bell, 547 U.S. 518, 555 (2006). Given that Petitioner has failed to establish the gateway standard, he has failed to meet the more stringent standard of the hypothetical freestanding claim.

CERTIFICATE OF APPEALABILITY

Because this is the Court's final order in this matter, the December 1, 2009 amendments to Rule 11(a) of the Federal Rules Governing Section 2254 Cases require the Court to determine in this Order whether a certificate of appealability should issue. The Court finds additional briefing on this issue unnecessary.

The Antiterrorism and Effective Death Penalty Act of 1996 requires a habeas petitioner appealing the denial of a 28 U.S.C. § 2254 to obtain a certificate of appealability. 28 U.S.C. § 2253(c). A court may issue a certificate of appealability only if the "applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must show that "reasonable jurists could debate whether . . . the petition should have been resolved

1  in a different manner or that the issues presented were adequate to deserve
2  encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000)
3  (internal quotations omitted).  The decision to issue a certificate of appealability
4  turns not on the court's assessment of the applicant's chances for success on appeal,
5  but whether the appeal would raise material and debatable questions. See Miller-El
6  v. Cockrell, 537 U.S. 322, 342 (2003).

The Court finds that Petitioner's claims do not justify the issuance of a certificate of appealability.  Petitioner has not made a substantial showing of the denial of a constitutional right.

Accordingly, **IT IS HEREBY ORDERED:**

1.  Petition under 28 U.S.C. 2254 for Writ of Habeas Corpus by a Person in State Custody (Ct. Rec. 1) is **DENIED**.

2.  The Court declines to issue a Certificate of Appealability.

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this Order, forward copies to counsel and petitioner, and **close the file**.

**DATED** this 7th day of May, 2010.

*s/Robert H. Whaley*
ROBERT H. WHALEY
United States District Judge

C:\WINDOWS\Temp\notes101AA1\deny.wpd

**ORDER DENYING HABEAS PETITION** ~ 12